**LES AuCOIN**
1st District, Oregon



CONGRESS OF THE UNITED STATES
HOUSE OF REPRESENTATIVES
WASHINGTON, D.C. 20515

RECEIVED
MAY 2 1980
NATIVE AMERICAN
RIGHTS FUND

May 2, 1980

Statement by Congressman Les AuCoin
on Siletz Reservation Bill
U.S. District Court
Portland, Oregon

The agreement sealed today in U.S. District Court between the Confederated Tribes of Siletz, the State of Oregon and the United States lays to rest the issue of ancestral hunting and fishing rights. This is the breakthrough I've insisted on prior to action in the U.S. House of Representatives on a proposal to create a 3,666-acre reservation for the tribe.

I'm delighted that the question of ancestral rights has been answered through a negotiating process instead of a court confrontation — and that it has been answered to the satisfaction of all parties.

On Tuesday, when I return to Washington, I will introduce legislation in the House to establish a reservation for the Siletz. I'm certain this bill will pass this year. I have already asked for prompt consideration of this bill by the House Committee on Interior and Insular Affairs. Hearings will be conducted on May 29.

The bill I will introduce will make a statutory reference to the agreement and the court decree, thus ratifying and reinforcing at the legislative level the consent decree which the tribe and the state have obtained in federal court.

The negotiated agreement and the decree of the federal court, taken together with Congressional ratification, will define finally and absolutely the tribe's hunting and fishing rights so that there can be no mistake about what those rights are and what they will always be.

In overcoming this final obstacle, the Siletz Tribe deserves to be congratulated for its initiative and resolve. It was the Siletz who originated the negotiations with the Oregon Department of Fish and Wildlife. The Department also deserves full credit for negotiating willingly and well.

The significance of this agreement must be seen in the context of the Siletz Indian Tribe Restoration Act of 1977, in which Congress restored official tribal status to the Siletz Indians.

The tribal restoration act automatically qualified needy tribal members for federal programs and services. It also set in motion a planning process leading to a recommendation to Congress as to whether a reservation should be created by Congress to provide a cultural and economic land base for the tribe.

As the author of the original 1977 restoration act in the House of Representatives, I have had more than a casual interest in following developments that have taken place since its passage. I am gratified that the act has enabled the Siletz Indians to reclaim their heritage and to share in health, education and related federal programs.

Even before the 1977 restoration law was passed, however, a potentially divisive issue had arisen. This was the question of ancestral Indian hunting and fishing rights. Did they exist? Could the creation of a reservation lead in any way to the granting of superior rights by the courts?

The answers were unclear. It was clear, however, that the last thing the region needed was an expansion of the bitter strife that has torn our region as a result of federal court decisions upholding treaty Indian fishing rights.

231 CANNON HOUSE OFFICE BUILDING, WASHINGTON, D.C. 20515   (202) 225-0855
1716 FEDERAL BUILDING, 1220 SW THIRD, PORTLAND, OREGON 97204   (503) 221-2901, OREGON TOLL FREE LINE 1-800-452-1920

Exhibit 2 to Joint Stipulated Motion to Vacate

-2-

That's why I said — to the tribe and every other interested party — that I would let no bill pass that could possibly aggravate the hunting and fishing rights problem in the Northwest, especially since the Siletz themselves had consistently said they had no interest in such rights.

That's why the 1977 tribal restoration act left the question of a reservation unanswered. The act spelled out procedures to be followed by the Department of Interior in preparing further recommendations to Congress. It gave the department two years to do the homework.

When the department submitted the reservation plan to Congress last fall, it was obvious that all the homework had not been done. The issue of hunting and fishing rights was still unresolved. I was determined to see that this question was answered. I announced that the proposed reservation plan would not move in the House of Representatives until the question was settled. I sought to encourage negotiations between the Siletz Tribe and the State.

Given the fact the Siletz themselves have never expressed a desire to seek superior hunting and fishing rights, some may question why the Siletz and the State have come to federal court to "define" rights in this agreement. The answer simply is that whether the Siletz are a federally recognized tribe or not, no one knows if they have superior rights, what those rights may be, or how vast they may be — unless the matter is defined.

A proposed reservation underscored in my mind the need for such a definition since I have always had the concern that a reservation could conceivably leverage a court claim for such rights. The Oregon Attorney General, in a recent legal opinion, made a supplementary comment that "many federal court decisions have held that hunting and fishing rights are a basic incident of reservation status, and that an intent to create hunting and fishing rights will be implied from the creation of a reservation."

The decision the Siletz and the State have made together defines, once and for all, what the tribe's hunting and fishing rights are — in numbers so small that no reasonable person can quarrel with them. This agreement has been entered into in full public view and with full opportunity for public participation. It spells out the tribe's hunting and fishing rights in terms of fixed numbers of salmon and game, in terms of specific locations and within defined boundaries, and in terms of managment regulations and concurrent seasons set by the State of Oregon.

The numbers of salmon and game that have been agreed to are up to 200 salmon and up to 375 deer and 25 elk a year. These figures are microscopic. The agreement stipulates that no new hunting or fishing claims would be created by the establishment of a reservation or future additions to a reservation.

This is a reasonable solution. It satisfies the State of Oregon, the Siletz Tribe and non-Indian hunters and fishermen in Oregon who support game management through license fees and tags.

Most important of all, it provides the opportunity to move beyond restoration of tribal status and federal assistance progams so the tribe can work toward economic self-sufficiency — such as the Warm Springs Tribe has done.

The economic needs of the Siletz are well documented by the Department of Interior. Over a third of Siletz families have incomes below the U.S. poverty level. The median household income is less than half the state average. In Lincoln County alone, Indians have a 44 percent unemployment rate. Twenty percent are on public assistance. Tribal members suffer from severe health problems and nutritional deficiencies. Substandard water and septic facilities are common, and more than a third of the Siletz families live in substandard housing. Nearly half of the adult tribal members have not completed high school.

The tribe's goal is just this: To improve the lives of its members by meeting their pressing needs and sustaining their sense of pride in their heritage. Revenue from tribal management of timberlands provided by a land base will make this possible. It will translate into a tribal community center and other possible commercial facilities, income for tribal members and an economic stimulus for Lincoln County.

Exhibit 2 to Joint Stipulated Motion to Vacate